**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

ROBERT ODENTHAL,                        :
                                        :    Civil Action No.: _____
            Plaintiff,                  :
                                        :
     v.                                 :    **JURY TRIAL DEMANDED**
                                        :
ANTERO RESOURCES CORPORATION,           :
                                        :
            Defendant.                  :
                                        :

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Robert Odenthal, by and through his undersigned counsel and hereby files this Complaint, averring as follows:

### THE PARTIES

1. Plaintiff, Robert Odenthal ("Odenthal") is an adult man domiciled in Cranberry Township, in the Commonwealth of Pennsylvania.

2. Defendant Antero Resources Corporation ("Antero") is a Delaware corporation that maintains its corporate headquarters in Denver, Colorado.

3. Antero had 20 or more employees during the relevant time period.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action involves questions regarding the deprivation of Plaintiff's rights under federal law.

5. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as Plaintiff Odenthal is a citizen of Pennsylvania, Defendant Antero is a citizen of Delaware and/or Colorado, and the amount in controversy exceeds $75,001.

6. Venue is proper because Odenthal was employed in Colorado, was working in Colorado within this Court's jurisdiction when the instant cause of action arose, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Colorado.

## PROCEDURAL REQUIREMENTS

7. Before commencing this action, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging that he was discriminated against by Antero in violation of Title VII and other laws.

8. Odenthal's EEOC charge arose out of many of the same facts alleged herein.

9. On or about September 30, 2025, the EEOC issued Odenthal a Notice of Right to Sue. A copy of that Notice is attached as Exhibit "A."

10. All other prerequisites to the filing of this suit have been met.

## STATEMENT OF FACTS

11. Odenthal began working at Antero in May of 2018 as an independent contractor.

12. In October of 2018 Odenthal was hired as a full-time Staff Drilling Engineer.

13. In December of 2018 Odenthal was promoted to Director of Drilling.

14. As Director of Drilling, Odenthal leveraged his expertise in drilling operations to transform Antero's drilling operation from a bottom quartile performer to best-in-class in U.S. land operations.

15. Odenthal worked 55-60 hour weeks to help reduce the time and cost of drilling Marcellus wells by more than 35% and Utica performance by approximately 18% in time and costs.

16. To improve the safety and cost efficiency of Antero's drilling operations, Odenthal had to implement new policies or replace or amend standards and policies put in place by Jon McEvers and others.

17. Specifically, Odenthal was tasked with examining one of Antero's Utica programs.

18. During his examination, Odenthal discovered engineering and policy failures that violated many American Petroleum Institute standards, state regulatory standards, and Marcellus programs.

19. For example, when Odenthal first started working on the Marcellus and Utica programs, he discovered that blow out preventors were not being tested to state regulatory or industry standards.

20. When Odenthal began reviewing Utica operations, it was found that managed pressure drilling (MPD) were not being performed in accordance with industry standards, which could have resulted in a blowout.

21. The policy of inadequate blow out preventor testing was put in place by Jon McEvers and others, who claimed to have received a verbal variance from the state but were unable to provide any record of having received a variance.

22. Odenthal overhauled the program, but to do so he had to replace the standards and practices put in place by his predecessors at Antero, including McEvers, which embarrassed McEvers and exposed his ineptitude.

23. Further, Odenthal instituted company standards and practices to meet industry and regulatory standards, which were nonexistent in prior years.

24. Odenthal also improved the safety of Antero's drilling operations by identifying engineering failures and ensuring all drilling operations met the most recent industry standards.

25. Odenthal's contributions to Antero were regularly recognized by Antero, and on January 1, 2021, Odenthal was once again promoted to Vice President of Drilling.

26. Odenthal also received praise from executives at Antero, including the CEO Paul Rady who asked Odenthal to speak at a quarterly board meeting because Odenthal "was the best drilling person" he had ever worked with "in his entire career."

27. Odenthal's supervisor was Diana Hoff, the Vice President (and later Senior Vice President) of Operations.

28. Ms. Hoff supervised Odenthal from 2018 until her separation from Antero in 2023.

29. Diana Hoff was also Jon McEvers' mentor, friend of twenty years, and Hoff often discussed her desire for McEvers—not Odenthal—to replace her.

30. Hoff, as Odenthal's direct supervisor, created a hostile culture and harassing environment for Odenthal in an effort to force Odenthal to quit his job at Antero.

31. Antero permitted Hoff and McEvers to discriminate against Odenthal by harassing him about his age, and otherwise maintaining a hostile work environment including by repeatedly making derogatory comments about Odenthal's age, gender, and appearance, such as:

    a.    Stating that Odenthal looked like a "creepy guy at a skating rink" and a "child molester" to insult Odenthal on the basis of his age, sex, and appearance;

    b.    Asking him during a team meeting when he was going to retire (to insinuate he was too old for his job);

    c.    Baselessly accusing Odenthal of being unable to "get along with women" to undermine Odenthal's ability to perform his job;

d.     Regularly excluding Odenthal from meetings to undermine his authority and send the message to Odenthal's colleagues that he was disfavored with senior leadership at Antero; and,

e.     Moving Odenthal into a conspicuously small office to embarrass him and further harm Odenthal's reputation and standing amongst his colleagues.

f.     In reference to Odenthal's use of public records from a previous job he worked on at his former employer, Hoff told Odenthal's colleagues, "don't be like Odenthal and be a thief and steal proprietary information from your previous employer."

32. Upon information and belief, Hoff targeted Odenthal throughout his employment because it was clear that Odenthal was better suited to succeed her as SVP of Drilling than McEvers.

33. Upon information and belief Hoff also wanted to replace Odenthal with her hand-picked candidate Chris Longwell, a younger man, because then Odenthal would no longer be a contender for her position.

34. In July or August of 2022, Odenthal followed Antero's internal procedures for filing a complaint about the hostile workplace created by Hoff reporting her behavior to senior executives Al Schopp and Kevin Ellis.

35. In August of 2022, Odenthal refused to sign off on a risk assessment of drilling operations by a nearby town and creek because Odenthal was concerned about the risk of explosions from well or gas transmission lines and the negative effects it could have on the community and nearby fresh water sources due to the lack of proper risk assessment prior to commencing operations.

36. Hoff demanded Odenthal's signature signing off on the risk assessment, but Odenthal refused and asked for additional safety precautions, at which point Hoff interrupted Odenthal and told him to "shut the fuck up."

37. After this incident, Hoff's efforts to drive Odenthal out of Antero intensified, culminating with Odenthal being the subject of a Human Resources investigation in late October of 2022.

38. After Hoff demanded an investigation, Odenthal received a telephone call from the CFO, Michael Kennedy, on November 8, 2022 informing him that he was immediately suspended and directed to leave the premises and have no contact with any employees of Antero.

39. During this investigation,  Hoff was allowed to continue her duties and interact with Antero staff, while Odenthal could not communicate with anyone from Antero.

40. Despite the retaliatory suspension, following the conclusion of Antero's investigation, Odenthal was reinstated in his position without further discipline.

41. Antero was aware of the discrimination and hostile work environment suffered by Odenthal no later than November of 2022.

42. Despite that knowledge, Antero took no action to address the ongoing discriminatory behaviors of its employees or to correct the hostile work environment.

43. The conclusions of the November 2022 investigation were never shared with Odenthal.

44. It is believed that the report showed that Hoff was an abusive executive that routinely belittled subordinates and violated company policies, far worse behavior than the conduct that ostensibly led to Odenthal's termination.

45. In the weeks that followed, upon information and belief, Hoff was permitted to retire with her full benefits and compensation intact without the embarrassment of termination or loss of benefits.

46. Hoff's employment with Antero ended on or about February 1, 2023.

47. Upon information and belief, Hoff's employment with Antero ended because she engaged in hostile and discriminatory behavior towards Odenthal and others.

48. Despite her discriminatory conduct, Hoff was permitted to retire with all of her retirement benefits intact and allowed to leave Antero with dignity, while Odenthal was deprived on the compensation he earned over years of service and summarily dismissed then immediately ushered out of the building by security personnel without the ability to say goodbye to his friends and colleagues.

49. Hoff was replaced with McEvers, who harbored animus towards Odenthal for replacing processes and procedures McEvers had established at Antero, and because McEvers blamed Odenthal for Hoff's departure from Antero.

50. Once McEvers was promoted, he immediately resumed Hoff's campaign to create a hostile work environment to try to force Odenthal to quit.

51. Antero permitted the age-related discrimination against Odenthal to continue under McEvers. McEvers would discriminate against, harass, and create a hostile work environment for Odenthal by:

      a.     Excluding Odenthal from meetings that Odenthal should have attended;

      b.     Undermining Odenthal's authority in front of Odenthal's subordinates;

      c.     Make comments that Odenthal was too old to do his job despite Odenthal's outstanding performance; and,

      d.     Circumventing the chain of command by interacting with Odenthal's younger subordinates to purposefully undermine and avoid the older Odenthal.

52. Despite McEvers continued efforts to undermine Odenthal, Odenthal's employment with Antero continued without any further complaints regarding Odenthal's conduct.

53. Odenthal's contributions were recognized with a further increase of compensation in the Spring of 2023.

54. In June of 2023, Odenthal had his yearly review with Rady and Kennedy.

55. At that review, Rady and Kennedy asked Odenthal how long he intended to work, and whether he would relocate to Denver.

56. Odenthal answered that he would work until he was at least 65—four more years—and relocate to Denver.

57. Rady and Kennedy responded that they thought it was great that Odenthal wanted to continue to work and agreed that Odenthal would remain with Antero until he was 65.

58. As part of the understanding between Rady, Kennedy, and Odenthal that Odenthal would work at least four more years in Denver, Odenthal relocated to Antero's Denver headquarters at the request of Antero.

59. In July 2023, Odenthal undertook the labor, and incurred the expense, of relocating to Denver with the expectation that he would continue to work for Antero for three more years.

60. Thereafter, Odenthal continued his efforts to improve Antero's drilling operation and received praise and recognition as an important part of Antero's success; indeed, Odenthal was told that he was "critical to the success" of Antero by CFO Mike Kennedy only two weeks prior to his dismissal.

61. Without warning, on September 15, 2023, Odenthal was terminated from his employment with Antero without any severance or compensation and in such a manner so as to deprive him from compensation in the form of Antero stock that would have vested within weeks of his termination.

62. Odenthal was not given any reason for the termination. The VP of Human Resources told Odenthal that Antero was simply moving "in a new direction."

63. Upon information and belief, Odenthal was terminated, in part, because he complained about efforts to discriminate against him, and how Antero maintained a hostile workplace.

64. Upon information and belief, Odenthal was replaced within hours of his termination by Tom Waltz, who had no drilling experience in his entire career, and was approximately thirty years younger than Odenthal.

65. Hoff, and later McEvers, attempted to drive Odenthal to quit Antero by creating a hostile work environment.

66. No non-discriminatory reason exists for Odenthal's sudden termination, as evidenced by Odenthal's stellar work performance prior to his termination and Antero's failure to provide an immediate reason for Odenthal's termination.

67. In connection with the EEOC investigation into Odenthal's Complaint of Discrimination, Antero produced Odenthal's personnel file.

68. Pursuant to CO Rev. Stat. § 8-2-129, an employee's "personnel file" means "the personnel records of an employee, in the manner maintained by the employer and using reasonable efforts by the employer to collect, that are **used or have been used to determine** the employee's

qualifications for employment, promotion, additional compensation, or **employment termination or other disciplinary action**." (emphasis added).

69. The personnel file produced by Antero did not contain any reports or records indicating any wrongdoing on the part of Odenthal used in the determination to terminate Odenthal's employment with Antero.

70. The absence of any reports of investigation in Odenthal's personnel file belies any non-discriminatory excuse Antero can conjure for Odenthal's termination.

## COUNT I
### Breach of Implied Contract

71. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

72. Rady and Kennedy offered Odenthal a specific term of employment with Antero.

73. Rady and Kennedy asked Odenthal how long he would work, and agreed that Odenthal could continue to work through his 65th birthday.

74. Odenthal accepted the offer to continue to work for Antero and continued performing his responsibilities consistent with long-term employment by relocating to Denver, Colorado.

75. In reliance on Antero's offer of employment until his 65th birthday, Odenthal relocated across the country from his home in Pennsylvania to Denver, Colorado at the insistence of Antero and great personal expense.

76. Based on the foregoing, there was an implied contract between Odenthal and Antero that Odenthal would remain employed full-time in his current role through the age of 65 (or four more years).

77. Antero breached this agreement when they terminated Odenthal without cause on September 15, 2023.

78. As a result, Odenthal was deprived of his expectation of salary, bonus, and stock units he was entitled to under his agreement with Rady and Kennedy.

## COUNT II
## Promissory Estoppel

79. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

80. Antero offered Odenthal employment for three years—or through his 65th birthday.

81. Antero required Odenthal to move to Denver to continue his employment, and could therefore foresee that Odenthal expected his employment to continue.

82. Odenthal relied on his implied contract for continued employment with Antero when he incurred the cost, in time, labor and money, to move to Denver.

83. Odenthal's reliance on the implied contract was reasonable because the promise came from the highest levels of Antero (the CEO and CFO) and because Odenthal's performance was exemplary throughout his employment with Antero—there was no reason to suspect that his termination was imminent.

84. Antero broke its promise to employ Odenthal through his 65th birthday.

85. As a result, Odenthal suffered damages, missed opportunities with other potential employers, lost compensation, stock units, and benefits that he would have accrued had he remained employed at Antero, plus the cost of moving to Denver and then the additional cost of moving back to Pennsylvania after he was terminated.

## COUNT III
### Discrimination — Title VII of the Civil Rights Act (42 U.S.C. § 2000)

86. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

87. At all relevant times, Odenthal was an "employee" within the meaning of Title VII, and Antero was an "employer."

88. Title VII of the Civil Rights Act makes it unlawful for an employer with more than fifteen employees to discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employes because of such individual's race, color, religion, sex or national origin.

89. Title VII also makes it unlawful to limit or otherwise classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of such individual's sex.

90. Here, Antero, by and through its employees Hoff and McEvers, discriminated against Odenthal by:

   a.   Stating that Odenthal looked like a "creepy guy at a skating rink" and a "child molester" because of his age and appearance;

   b.   Asking him during a team meeting when he was going to retire (to insinuate he was too old for his job);

   c.   Baselessly accusing Odenthal of being unable to "get along with women" to undermine Odenthal's ability to perform his job;

   d.   Regularly excluding Odenthal from meetings to undermine his authority and send the message to Odenthal's colleagues that he was disfavored with senior leadership at Antero;

   e.   Excluding Odenthal from meetings that Odenthal should have attended;

   f.   Undermining Odenthal's authority in front of Odenthal's subordinates; and

     g.    Continuing to make comments that Odenthal was too old to do his job despite Odenthal's outstanding performance.

91. Antero's termination of Odenthal for the same behavior displayed by Hoff, where Hoff was permitted to retire with full benefits, was discriminatory on basis of his sex.

92. In the case of Ms. Hoff, a female, she was permitted to announce her retirement from Antero with dignity and fanfare, while in the case of Mr. Odenthal, a male, he was abruptly escorted from Antero's Denver office without so much a being permitted to say goodbye to his team and colleagues.

93. This disparate treatment for ostensibly the same conduct was an unlawful discrimination against Mr. Odenthal because of his sex and/or in retaliation for his complaint against the then Senior Vice President of Operations.

94. As a direct and proximate results of Antero's discriminatory conduct in violation of Title VII, Odenthal has suffered, and continues to suffer, monetary and economic damages, including loss of past and future income, other compensation, and benefits in addition to suffering severe mental anguish and emotional distress, as well as personal and professional reputational harm, for which he is entitled to an award of damages, attorney's fees, and costs.

95. Antero's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Odenthal is entitled to an award of punitive damages.

## COUNT IV
**Harassment — Title VII of the Civil Rights Act (42 U.S.C. § 2000)**

96. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

97. At all relevant times, Odenthal was an "employee" within the meaning of Title VII, and Antero was an "employer."

98. Title VII makes it illegal to subject an employee to a discriminatorily hostile or abusive environment.

99. Antero harassed Odenthal by subjecting him to a workplace filled with comments and conduct that were discriminatory and hostile towards Odenthal's age and gender.

100. Specifically, Antero harassed Odenthal by:

    a.    Stating that Odenthal looked like a "creepy guy at a skating rink" and a "child molester" because of his age and appearance;

    b.    Asking him during a team meeting when he was going to retire (to insinuate he was too old for his job);

    c.    Baselessly accusing Odenthal of being unable to "get along with women" to undermine Odenthal's ability to perform his job;

    d.    Regularly excluding Odenthal from meetings to undermine his authority and send the message to Odenthal's colleagues that he was disfavored with senior leadership at Antero;

    e.    Excluding Odenthal from meetings that Odenthal should have attended;

    f.    Undermining Odenthal's authority in front of Odenthal's subordinates; and

    g.    Continuing to make comments that Odenthal was too old to do his job despite Odenthal's outstanding performance.

101. Antero is liable for the harassment that Odenthal was subjected to during the course of his employment because Antero failed to take prompt remedial action after Odenthal reported

Hoff's discrimination, and because Antero allowed McEvers to continue to engage in similar behaviors after Hoff's departure.

102. As a direct and proximate results of Antero's discriminatory conduct in violation of Title VII, Odenthal has suffered, and continues to suffer monetary and economic damages, including loss of past and future income, other compensation, and benefits. Odenthal also suffered severe mental anguish and emotional distress, as well as personal and professional reputational harm, for which he is entitled to an award of damages, attorney's fees, and costs.

103. Antero's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Odenthal is entitled to an award of punitive damages.

### COUNT V
### Retaliation — Title VII of the Civil Rights Act (42 U.S.C. § 2000)

104. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

105. At all relevant times, Odenthal was an "employee" within the meaning of Title VII, and Antero was an "employer."

106. Antero violated Title VII when it retaliated against Odenthal by suspending him after he complained about Hoff's discriminatory behavior.

107. Antero further violated Title VII by promoting Hoff's protégé, McEvers, to be Odenthal's supervisor because Antero knew or should have known that McEvers would continue to discriminate against Odenthal in the same fashion as Hoff, and in fact, did so.

108. Finally, Antero violated Title VII by terminating Odenthal because Odenthal's termination was the culmination of retaliatory, discriminatory, and harassing behaviors of Hoff and McEvers which interfered with Odenthal's ability to lead his team and do his job.

109. As a direct and proximate results of Antero's discriminatory conduct in violation of Title VII, Odenthal has suffered, and continues to suffer monetary and economic damages, including loss of past and future income, other compensation, and benefits. Odenthal also suffered severe mental anguish and emotional distress, as well as personal and professional reputational harm, for which he is entitled to an award of damages, attorney's fees, and costs.

110. Antero's unlawful actions constitute bad faith, malicious, willful, and wanton violations of Plaintiff's federally protected rights, for which Odenthal is entitled to an award of punitive damages.

### <u>COUNT VI</u>
### Discrimination — Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*)

111. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

112. At all times relevant, Antero had more than twenty employees.

113. At all times relevant, Odenthal was an "employee" and Antero was an "employer" as those terms are defined in the Age Discrimination in Employment Act ("ADEA").

114. The ADEA prohibits age discrimination against people older than 40.

115. The ADEA also makes it unlawful to harass a person because of his age.

116. Odenthal was older than 40 during his employment with Antero, thus he is protected under the ADEA.

117. Antero discriminated against Odenthal based on his age, including by:

a.  Stating that Odenthal looked like a "creepy guy at a skating rink" and a "child molester" because of his age and appearance;

b.  Asking him during a team meeting when he was going to retire (to insinuate he was too old for his job);

c.  Baselessly accusing Odenthal of being unable to "get along with women" to undermine Odenthal's ability to perform his job;

d.  Regularly excluding Odenthal from meetings to undermine his authority and send the message to Odenthal's colleagues that he was disfavored with senior leadership at Antero;

e.  Excluding Odenthal from meetings that Odenthal should have attended;

f.  Undermining Odenthal's authority in front of Odenthal's subordinates; and

g.  Continuing to make comments that Odenthal was too old to do his job despite Odenthal's outstanding performance.

118. Finally, Antero violated Title VII by terminating Odenthal because Odenthal's termination was the culmination of retaliatory, discriminatory, and harassing behaviors of Hoff and McEvers which interfered with Odenthal's ability to lead his team and do his job.

119. As a direct and proximate result of Antero's discriminatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Odenthal is entitled to an award of damages, attorney's fees, and costs.

120. The foregoing conduct, as alleged, constitutes a willful violation of the ADEA within the meaning of 29 U.S.C § 626(b) and, as a result, Plaintiff is entitled to liquidated damages.

<u>**COUNT VII**</u>
**Harassment — Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq*.)**

121. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

122. At all times relevant, Antero had more than twenty employees.

123. At all times relevant, Odenthal was an "employee" and Antero was an "employer" as those terms are defined in the Age Discrimination in Employment Act ("ADEA").

124. The ADEA prohibits age discrimination against people older than 40.

125. The ADEA also makes it unlawful to harass a person because of his age.

126. Antero subjected Odenthal to harassment based on his age when it permitted Odenthal's supervisors to:

    a.    Stating that Odenthal looked like a "creepy guy at a skating rink" and a "child molester" because of his age and appearance;

    b.    Asking him during a team meeting when he was going to retire (to insinuate he was too old for his job);

    c.    Baselessly accusing Odenthal of being unable to "get along with women" to undermine Odenthal's ability to perform his job;

    d.    Regularly excluding Odenthal from meetings to undermine his authority and to send the message to Odenthal's colleagues that he was disfavored with senior leadership at Antero;

    e.    Excluding Odenthal from meetings that Odenthal should have attended;

    f.    Undermining Odenthal's authority in front of Odenthal's subordinates; and

    g.    Continuing to make comments that Odenthal was too old to do his job despite Odenthal's outstanding performance.

127. Antero was aware of the harassment suffered by Odenthal.

128. As a direct and proximate result of Antero's discriminatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Odenthal is entitled to an award of damages, attorney's fees, and costs.

129. The foregoing conduct, as alleged, constitutes a willful violation of the ADEA within the meaning of 29 U.S.C § 626(b) and, as a result, Plaintiff is entitled to liquidated damages.

## COUNT VIII
### Retaliation — Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*)

130. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

131. At all times relevant, Antero had more than twenty employees.

132. At all times relevant, Odenthal was an "employee" and Antero was an "employer" as those terms are defined in the Age Discrimination in Employment Act ("ADEA").

133. The ADEA prohibits age discrimination against people older than 40.

134. The ADEA also makes it unlawful to retaliate against an employer that complains of age discrimination.

135. Odenthal was older than 40 during his employment with Antero, thus he is protected under the ADEA.

136. Antero violated the ADEA when it retaliated against Odenthal by suspending him after he complained about Hoff's discriminatory behavior.

137. Antero further violated the ADEA by promoting Hoff's protégé, McEvers, to be Odenthal's supervisor because Antero knew or should have known that McEvers would continue to discriminate against Odenthal in the same fashion as Hoff, and in fact, did so.

138. Finally, Antero violated the ADEA by terminating Odenthal because Odenthal's termination was a continuation of the discriminatory and harassing behaviors of Hoff and McEvers.

139. As a direct and proximate result of Antero's discriminatory conduct in violation of the ADEA, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Odenthal is entitled to an award of damages, attorney's fees, and costs.

140. The foregoing conduct, as alleged, constitutes a willful violation of the ADEA within the meaning of 29 U.S.C § 626(b) and, as a result, Plaintiff is entitled to liquidated damages.

### <u>COUNT IX</u>
**Discrimination — Colorado Anti-Discrimination Act  (43 P.S. § 951 *et seq*.)**

141. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

142. At all times relevant, Odenthal was an "employee" and Antero was an "employer" as those terms are defined by the Colorado Anti-Discrimination Act ("CADA").

143. CADA prohibits age discrimination against anyone between 40 and 70 years of age.

144. Odenthal was between 40 and 70 years of age at all times relevant to this action.

145. Odenthal suffered intentional discrimination from Antero based on his age, including when Antero, by and through its employees:

    a.    Stated that Odenthal looked like a "creepy guy at a skating rink" and a "child molester" because of his age and appearance;

    b.    Asked him during a team meeting when he was going to retire (to insinuate he was too old for his job);

      c.       Baselessly accused Odenthal of being unable to "get along with women" to undermine Odenthal's ability to perform his job;

      d.       Regularly excluded Odenthal from meetings to undermine his authority and to send the message to Odenthal's colleagues that he was disfavored with senior leadership at Antero;

      e.       Excluded Odenthal from meetings that Odenthal should have attended;

      f.       Undermined Odenthal's authority in front of Odenthal's subordinates; and

      g.       Continued to make comments that Odenthal was too old to do his job despite Odenthal's outstanding performance.

146. The discrimination Odenthal suffered impacted Odenthal's authority to lead his team, his credibility with colleagues, and interfered with his ability to do his job.

147. Antero violated CADA by terminating Odenthal as the culmination of retaliatory, discriminatory, and harassing behaviors of Hoff and McEvers which interfered with Odenthal's ability to lead his team and do his job.

148. It was also pervasive in that it impacted Odenthal's day-to-day employment over a period of several years.

149. As a direct and proximate result of Antero's discriminatory conduct in violation of the Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Odenthal is entitled to an award of damages, attorney's fees, and costs.

150. The foregoing conduct, as alleged, constitutes a willful violation of the Act and, as a result, Plaintiff is entitled to liquidated damages.

## COUNT X
**Harassment — Colorado Anti-Discrimination Act (Colo. Rev. Stat. § 24-34-402 )**

151. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

152. At all times relevant, Odenthal was an "employee" and Antero was an "employer" as those terms are defined by CADA.

153. The Act prohibits age related harassment against anyone between the ages of 40 to 70 years of age.

154. Odenthal was between 40 and 70 years of age at all times relevant to this action.

155. Odenthal suffered intentional discrimination from Antero based on his age, including when Antero, by and through its employees:

   a.    Stated that Odenthal looked like a "creepy guy at a skating rink" and a "child molester" because of his age and appearance;

   b.    Asked him during a team meeting when he was going to retire (to insinuate he was too old for his job);

   c.    Baselessly accused Odenthal of being unable to "get along with women" to undermine Odenthal's ability to perform his job;

   d.    Regularly excluded Odenthal from meetings to undermine his authority and to send the message to Odenthal's colleagues that he was disfavored with senior leadership at Antero;

   e.    Excluded Odenthal from meetings that Odenthal should have attended;

   f.    Undermined Odenthal's authority in front of Odenthal's subordinates; and

   g.    Continued to make comments that Odenthal was too old to do his job despite Odenthal's outstanding performance.

156. The harassment Odenthal suffered was severe — his direct supervisor often hurled expletives at him in front of Odenthal's colleagues.

157. It was also pervasive in that it impacted Odenthal's day-to-day employment over a period of several years.

158. The harassment Odenthal suffered was subjectively offensive to Odenthal and is also objectively offensive to a reasonable member of Odenthal's protected class.

159. As a direct and proximate result of Antero's discriminatory conduct in violation of the Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Odenthal is entitled to an award of damages, attorney's fees, and costs.

160. The foregoing conduct, as alleged, constitutes a willful violation of the Act and, as a result, Plaintiff is entitled to liquidated damages.

## COUNT XI
### Retaliation — Colorado Anti-Discrimination Act Colorado  (Colo. Rev. Stat. § 524-34-402)

161. Plaintiff hereby incorporates all previous averments by reference as if fully set forth herein.

162. At all times relevant, Odenthal was an "employee" and Antero was an "employer" as those terms are defined by CADA.

163. The Act prohibits age related harassment against anyone between 40 and 70 years of age.

164. Odenthal was between 40 and 70 years of age at all times relevant to this action.

165. The Act also prohibits an employer from retaliating against an employee for complaining about age discrimination.

166. Antero violated the Act when it retaliated against Odenthal by suspending him after he complained about Hoff's discriminatory behavior.

167. Antero further violated the Act by promoting Hoff's protégé, McEvers, to be Odenthal's supervisor because Antero knew or should have known that McEvers would continue to discriminate against Odenthal in the same fashion as Hoff, and in fact did so.

168. Finally, Antero violated the Act by terminating Odenthal because Odenthal's termination was a continuation of the discriminatory and harassing behaviors of Hoff and McEvers.

169. As a direct and proximate result of Antero's discriminatory conduct in violation of the Act, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Odenthal is entitled to an award of damages, attorney's fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and grant the following relief:

a.　Compensatory and restitution damages for Antero's breach of implied contract and under the theory of promissory estoppel;

b.　Restitution damages returning unvested stock options to Odenthal that he would have received but for Antero's breach of implied contract;

c.　Declare that Defendant's conduct violated Title VII, the ADEA and CADA;

d.　Order Defendant to reinstate Plaintiff, or alternatively, award front pay;

e.　Award Plaintiff back pay and benefits plus prejudgment interest;

f.　Award liquidated damages under the ADEA and CADA;

g.　Award compensatory damages, including for emotional distress, humiliation, and inconvenience, under the CADA;

h.　Reinstate Plaintiff's restricted stock units (LTIPs);

i.  Award Plaintiff damages to compensate him for his inability to find comparable employment at his age;

j.  Award Plaintiff reasonable attorneys' fees, costs, and expenses;

k.  Award lost salary for an appropriate severance period; and

l.  Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED this 24th day of December, 2025.

/s/ Michael J. Gates
Michael J. Gates
Foster Graham Milstein & Calisher, LLP
360 South Garfield Street, Suite 600
Denver, Colorado 80209
Telephone: 303-333-9810
Email: mgates@fostergraham.com
*Attorneys for Plaintiff*

/s/ Jason G. Farrelly
Daniel P. Lynch (*USDC CO admission in progress*)
Jason G. Farrelly (*USDC CO admission in progress*)
The Lynch Law Group, LLC
Cranberry Professional Park
501 Smith Drive, Suite 3
Cranberry Township, PA 16066
Email: dlynch@lynchlaw-group.com
Email: jfarrelly@lynchlaw-group.com
Telephone: 724-776-8000
*Attorneys for Plaintiff*